WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| Julie D Friess, | No. CV-24-08180-PCT-SHD |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Mortgage Law Firm PC, et al., | |
| Defendants. | |

Pending before the Court are Defendant Bank of America, N.A.'s Motion to Dismiss, (Doc. 7), and Defendants NewRez LLC and U.S. Bank Trust National Association's Motion to Dismiss (Doc. 8.)  For the reasons explained below, Defendants' motions are **granted** and Plaintiff Julie Friess's claims are **dismissed with prejudice**. Furthermore, Friess will be ordered to show cause as to why she should not be declared a vexatious litigant.

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On August 12, 2024, Friess filed a Complaint against Bank of America, N.A. ("Bank of America"), NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), and U.S. Bank Trust National Association ("U.S. Bank"), among other defendants, in the Arizona superior court in and for Yavapai County.  (Doc. 1-1 at 3.)[1]  On September 9, 2024, she filed an Amended Complaint styled as an "Amendment to Original

---

[1]    As described in greater detail below, this lawsuit is the latest in a string of suits filed by Friess in her thus-far successful campaign to stave off foreclosure of her home.

1    COMPLAINT (in addition to and including original complaint)."  (Doc. 1-1 at 175.)

2    Shortly thereafter, Shellpoint timely removed the matter to this Court.  (Doc. 1.)

3         The information set forth below is derived from both the Amended Complaint and

4    the original Complaint (together, the "Combined Complaint").[2]  The Combined Complaint

5    spans over 70 pages, is not organized in any discernable fashion, is largely comprised of

6    rambling, incomprehensible gobbledygook, and includes irrelevant and conclusory factual

7    assertions untethered to specific claims for relief.  (Doc. 1-1 at 169–240.)[3]  The non-

8    conclusory facts alleged in the Combined Complaint are assumed as true for purposes of

9    the pending motions to dismiss.

10        Additionally, the Court takes judicial notice of the facts set forth in documents

11   attached to the motions to dismiss, to which Friess has not objected.  *See Arizona*

12   *Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015) (courts "may take

13   judicial notice of official information posted on a governmental website, the accuracy of

14   which is undisputed" (citation modified)); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

15   998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of [information on

16   governmental websites], as it was made publicly available by government entities . . . and

17   neither party disputes the authenticity of the web sites or the accuracy of the information

18   displayed therein."); *see also* Fed. R. Evid. 201(b) (judicial notice is appropriate for a fact

19   "not subject to reasonable dispute because it . . . can be accurately and readily determined

20   from sources whose accuracy cannot reasonably be questioned").

21   _____

22   [2]     "Normally, an amended complaint supersedes the original complaint."  *Pac. Bell Tel. Co. v. Linkline Comms., Inc.*, 555 U.S. 438 456 n.4 (2009).  In this case, however, it is apparent that Friess intended her Amended Complaint to supplement rather than replace
23   and supersede her original complaint.  Given the requirement that documents filed pro se be construed liberally, the Court in its discretion considers the Amended Complaint and
24   original Complaint together to resolve the pending Motions to Dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and
25   a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal citations and quotation marks
26   omitted)); *see also* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

27   [3]     Unfortunately, the Combined Complaint regularly skips or duplicates paragraph numbers and often includes them non-sequentially.  Therefore, citations to the Combined
28   Complaint include paragraph references wherever feasible.

**A.     The Sedona Property and Loans**

In 2003, Friess obtained a loan to purchase a property located in Sedona, Arizona (the "Property"). (Doc. 1-1 at 196 ¶ 2, 197 ¶ 9.) In 2005, she refinanced her loan on the Property with a loan from American Brokers Conduit that was secured by a Deed of Trust. (*Id.* at 197–98 ¶¶ 10–13; Doc. 8-2.) Servicing of this loan was transferred to Bank of America in 2007, and it serviced the loan until April 2012. (Doc. 1-1 at 199 ¶¶ 19–21, 23.)

Friess made her mortgage payments until 2011, when a loan officer at Bank of America told her to stop making payments to obtain a lower interest rate and ultimately told her that "it was approved." (*Id.* at 200 ¶¶ 25–26, 202 ¶ 34.) In April 2012, Bank of America sold the loan and "was paid in full." (*Id.* at 202 ¶¶ 33–34; *see also* Doc. 8-4 (reflecting that Bank of America assigned the deed of trust to Resurgent Services, LP).)[4] The deed of trust was subsequently transferred in 2015 to New Penn Financial, LLC, (*see* Doc. 8-5), and finally in 2019 it was transferred to Shellpoint, (Doc. 8-6).

In 2019, Shellpoint "referred the loan to an attorney . . . to commence foreclosure." (Doc. 8-7 at 18.) Friess alleges that when the foreclosure proceedings began in 2019, Shellpoint "had approved a repayment plan with the borrower" and she "was currently paying on her repayment plan following a forbearance from a trauma and severe illness for three months but [Shellpoint] refused to stop the foreclosure action." (Doc 1-1 at 190.) She further alleges that after she filed a TRO action in January 2020, Shellpoint's attorney "cancelled the foreclosure one week prior to the auction while laughing on the phone at [Friess], and making fun of her," and another attorney told her that "'accidentally' foreclosing on anyone in the state of Arizona is not even a tort, so he 'really didn't care what happened.'" (*Id.* at 190–91.)

**B.     The 2020 Lawsuit (*Friess I*)**

On January 29, 2020, Friess filed an amended complaint against Bank of America in Yavapai County Superior Court, Case No. V1300CV202080005. (Doc. 7-1.) In this

---

[4]     Friess alleges contradictory facts regarding the status of the loan, claiming both that her "loan was paid off in 2012," (Doc. 1-1 at 214 ¶ 95), and that she "made payments until 2020," (*id.* ¶ 110).

lawsuit, Friess alleged errors in processing payments on the loan, and wrongful foreclosure. (*Id.*) Bank of America moved to dismiss, and on May 4, 2020, the superior court granted the motion, dismissing Bank of America with prejudice. (Doc. 7-2.)

### C.    The 2021 Lawsuit (*Friess II*)

On May 7, 2021, Friess filed a lawsuit in the United States District Court for the District of Arizona captioned *Friess v. Shellpoint Mortgage Servicing*, 21-cv-08101-GMS, in which she asserted that Shellpoint violated 12 U.S.C. § 2605 and 12 C.F.R. §1024. (Doc. 8-7.) Among other things, Friess alleged in that action that Shellpoint was "the current beneficiary" and "the current servicer" of the loan secured by the 2005 deed of trust and that "due to Shellpoint not providing [certain requested records], Ms. Friess has been unable to . . . properly assess the accuracy, or lack thereof, of Shellpoint's accounting regarding the amounts owed, including but not limited to, assessing the legitimacy of various actions taken by Shellpoint in connection with servicing the Loan." (Id. ¶¶ 7-9, 25.) Friess added: "Due to being unable to bring her account current, Ms. Friess is forced to continue living in fear that she may lose her property through foreclosure efforts . . . ." (*Id.* ¶ 28.) Based on those allegations, she asserted claims against Shellpoint for violating various provisions of the Real Estate Settlement Procedures Act ("RESPA"). (*Id.* ¶¶ 31-34.)

On March 10, 2022, Chief Judge Snow dismissed Friess's complaint for failure to state a claim, with leave to amend, and ordered that failure to file an amended complaint within 30 days would result in dismissal with prejudice without further notice. (Doc. 8-8 at 3-11.) On April 13, 2022, after Friess failed to timely file an amended complaint, the Clerk entered judgment in Shellpoint's favor and dismissed the case with prejudice. (*Id.* at 2.)

### D.    The 2022 Lawsuit (*Friess III*)

On July 22, 2022, Shellpoint recorded a notice of trustee's sale with the Yavapai County Recorder's Office, announcing that a trustee's sale of the Property was scheduled for October 31, 2022. (Doc. 8-9 at 2.) On August 18, 2022, Friess filed a lawsuit in

1    Yavapai County Superior Court captioned *Friess v. Shellpoint Mortgage Servicing et al.*,
2    Case No. V1300-CV-202280209.  (Doc. 8-10.)  The complaint consisted of one lengthy
3    paragraph and set forth a wide array of claims—including many of the same claims and
4    theories that Friess has reasserted in this case—and, like the Combined Complaint here,
5    alleged few, if any, nonconclusory facts.  (*Id.*)

6        The trustee's sale scheduled for October 21, 2022 did not go forward, and on
7    February 21, 2023, the Yavapai County Superior Court dismissed Shellpoint (as well as
8    several other defendants) for failure to serve.  (Doc. 8-11.)

9        **E.**    **This Lawsuit (*Friess IV*)**

10       On July 1, 2024, Shellpoint recorded another notice of trustee's sale with the
11   Yavapai County Recorder's Office, announcing that a trustee's sale of the Property was
12   scheduled for October 3, 2024. (Doc. 8-12 at 2.)  This lawsuit followed.

13       In the Operating Complaint, Friess asks the court, "to issue a court order to stop all
14   foreclosure proceedings to [the Sedona Property] where she resides and to issue a
15   temporary restraining order (TRO), preliminary injunction, permanent injunction,
16   restitution, sanctions, and damages as it sees fit." (Doc. 1-1 at 187–88 ¶ 1.)[5]  The damages
17   Friess seeks include $5 million in compensatory damages and $750 million in punitive
18   damages, and she also asks for miscellaneous relief including that the "court award [Friess]
19   control of the court's corporate charter and order[] the court to add [her] to Its Board of
20   Directors." (*Id.* at 231–32.)  In the Combined Complaint, Friess generally questions the
21   legitimacy of the October 2024 notice of trustee's sale because (a) "MERS does not have
22   authority to assign this deed of trust"; (b) the name of the trustor was not written "in capital
23   letters and . . . exactly as shown on the deed of trust"; (c) American Brokers Conduit has
24   been defunct since 2007," meaning "[t]his is a fraudulent/fake assignment and
25   foreclosure"; and (d) certain assignments of the deed of trust were the product of "notary,
26   and signature FRAUD" because two documents are signed by one individual but the two
27   signatures are different.  (*Id.* at 189–91.)  She also alleges that a January 8, 2024 assignment

28   ―――――――――――
[5]    The Court previously denied Friess's request for a temporary restraining order.
(Doc. 18.)

of the loan was "fake," in part because the notary public did not confirm "the truthfulness, accuracy, or validity of the document." (*Id.* at 191–93.)  Friess then appears to identify various purported deficiencies with the assignment of deed of trust, which seem to focus on clerical details, for example, whether her name appeared in all capital letters and included the descriptor "An Unmarried Woman."  (*Id.* at 193–95.)[6]

Bank of America moved to dismiss under Fed. R. Civ. P. 12(b)(5) and (b)(6).  (Doc. 7.)  Friess responded, (Doc. 23), and Bank of America replied, (Doc. 27).

Shellpoint and U.S. Bank (collectively, the "Shellpoint Defendants"), also moved to dismiss under Fed. R. Civ. P. 12(b)(6), but did not base their motion on res judicata and instead argued that Freiss had failed to state a claim against them.  (Doc. 8.)  Friess responded, (Doc. 24), and the Shellpoint Defendants replied, (Doc. 28).

Given that the Court denied Friess's request for a temporary restraining order in October 2024, (Doc. 18), all that remains pending are the motions to dismiss.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[6]     An "Addendum" that follows the original complaint sets forth a confusing array of statements concerning the loans, deeds of trust, the Defendants, and Friess's requested relief.  (*Id.* at 233–40.)  Because these statements constitute, at most, conclusory allegations, and because they were not set forth in either the original complaint or the amended complaint, they are not addressed.

Friess also enclosed, as an attachment to the original complaint, an affidavit in which she asserts, among other things, that "Julie D. Friess, is not a U. S. [sic] citizen subject to an administrative court's jurisdiction without an injured party or damaged property."  (*Id.* at 58–59.)  This appears to be a sovereign citizen-style argument that the Court will not address.  *See United States v. Ward*, 182 F.3d 930 (9th Cir. 1999) (finding that the appellant's sovereign citizen "contentions are frivolous and the courts ordinarily reject similar contentions without extended argument"); *see also Caetano v. IRS*, 2023 WL 3319158, at *4–5 (E.D. Cal. 2023) (collecting cases).

1    statements" considered.  *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked

2    assertions devoid of further factual enhancement." (citation modified)).    That said, "a

3    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual

4    allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).    A

5    "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable,

6    and [ ] a recovery is very remote and unlikely."  *Id.* at 556 (citation modified).    Pro se

7    filings must be construed "liberally when evaluating them under *Iqbal*."  *Jackson v. Barnes*,

8    749 F.3d 755, 763–64 (9th Cir. 2014).

9    **III.    DISCUSSION**

10        **A.    Bank of America's Motion to Dismiss**

11        Bank of America makes two relatively straightforward arguments for why Friess

12    has failed to state a claim against it: (1) most of the conduct alleged in the Combined

13    Complaint occurred long after 2012, when Bank of America ceased being involved with

14    the loans and deeds of trust on the Property, and (2) any claims asserted against Bank of

15    America predating 2012 are barred by res judicata due to the judgment entered against

16    Friess and in favor of Bank of America in *Friess I*.  (Doc. 7 at 5–6.)

17        Bank of America is correct that most of the facts alleged in the Combined Complaint

18    relate to actions taken by individuals or entities long after 2012 and thus cannot form the

19    basis of claims against Bank of America.    The Combined Complaint does, however,

20    include allegations of Bank of America's conduct in the 2011–2012 timeframe.  (Doc 1-1

21    at 200 ¶¶ 25–26, 202 ¶¶ 33–34.)    Assuming, without deciding, that Friess's allegations

22    against Bank of America are sufficient to state a viable claim for relief against it, those

23    claims are barred by res judicata.

24        "Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised

25    *or could have been raised* in a prior action.'"  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956

26    (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th

27    Cir. 2001)).    "Res judicata applies when the earlier suit (1) involved the same claim or

28    cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved

1    identical parties or privies." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th

2    Cir. 2005) (citation modified).

3        In this case, parts 2 and 3 of the res judicata test are easily satisfied because the 2020

4    litigation involved Friess and Bank of America, (Doc. 7-1), and the court dismissed the

5    case with prejudice after reaching a final judgment on the merits in favor of Bank of

6    America (Doc. 7-2).  *See Stewart*, 297 F.3d at 956 ("The phrase 'final judgment on the

7    merits' is often used interchangeably with 'dismissal with prejudice.'").  Thus, the only

8    question remaining is whether this lawsuit and the 2020 litigation involved the same claim

9    or cause action.

10       Courts look at four criteria that are not applied "mechanistically" when analyzing

11   the first part of the res judicata test: "(1) whether the two suits arise out of the same

12   transactional nucleus of facts; (2) whether rights or interests established in the prior

13   judgment would be destroyed or impaired by prosecution of the second action; (3) whether

14   the two suits involve infringement of the same right; and (4) whether substantially the same

15   evidence is presented in the two actions."  *Mpoyo*, 430 F.3d at 987.  For the first factor,

16   courts "use a transaction test to determine whether two suits share a common nucleus of

17   operative fact," and "[w]hether two events are part of the same transaction or series

18   depends on whether they are related to the same set of facts and whether they could be

19   conveniently tried together."  *Id.* (citations omitted).  The first criterion is often dispositive.

20   *Id.* at 988 ("We have often held the common nucleus criterion to be outcome determinative

21   under the first res judicata element.").

22       In this case, the first criterion establishes that *Friess I* and *Friess IV* involved the

23   same claims or causes of action.  In *Friess I*, Friess alleged that Bank of America

24   "misappropriated her payments since 2011," imposed "random fees and fines that cannot

25   be accounted for," "absorbed" "her extra payments," "lied and fabricated responses" and

26   was "trying to steal her house from her."  (Doc. 7-1.)  In *Friess IV*, she now alleges that a

27   Bank of America employee lied to her about the status of her mortgage and that Bank of

28   America improperly received full payment on the mortgage.  (Doc 1-1 at 200 ¶¶ 25–26,

202 ¶¶ 33–34.)  These allegations all arise from the same transactional nucleus of facts and Friess could have asserted the same 17 or so causes of action in *Friess I* as she is asserting now.

The latter three criterion are difficult to examine because Friess's complaints in both *Friess I* and *Friess IV* set forth only a few non-conclusory factual allegations and do not clearly identify her causes of action, the rights she seeks to vindicate, or the evidence needed to prevail.  Although "examination of the latter three criterion does not yield a clear outcome, [*Friess I* and *Friess IV*] clearly share a common nucleus of operative fact under the first criterion.  The first criterion controls and assures the two suits involve the same claim or cause of action." *Myopo*, 430 F.3d at 988.  Thus, because all three elements of the res judicata test are satisfied, Friess's claims against Bank of America fail to state a claim.

To avoid this outcome, Friess argues in her response that her claims in *Friess IV* differ from those in *Friess I* because she now alleges fraud against Bank of America, and her causes of action are not identical to those asserted in *Friess I*.  (Doc. 23 at 4.)  These arguments are unavailing.  First, although she includes more details about Bank of America's alleged fraud in the Combined Complaint, she did assert in *Friess I* that Bank of America had lied to her, effectively trying to assert a fraud claim.  Second, the fact that she has attempted to repackage her causes of action and assert them in scattershot fashion does not change the analysis because "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003).  Put another way, the test is whether Friess could have pursued in *Friess I* the same claims she seemingly now asserts.  *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) ("It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.").  Here, Friess could—and largely did—assert the same claims in *Friess I* as she does now in *Friess IV*.  Her claims are therefore barred by res judicata and will be dismissed with

1    prejudice as to Bank of America.[7]

2    **B.    The Shellpoint Defendants' Motion to Dismiss**

3    Rather than move for dismissal based on res judicata, the Shellpoint Defendants

4    assert that Friess's complaint fails to state a claim against them. (Doc. 8.) The Shellpoint

5    Defendants identify eight separate causes of action they believe Friess attempted to assert

6    against them in the Combined Complaint:

> Although it is unclear what exactly the claims are in Ms. Friess's complaint,
> she seems to allege: (1) defendants violated 12 U.S.C. § 5552(a)(1) and 12
> U.S.C. § 5531; (2) defendants refused to answer Ms. Friess's questions
> regarding enforcement of the note; (3) Shellpoint has no authority to
> foreclose on the property because did not provide an "S-3" form; (4)
> Shellpoint must provide to Ms. Friess an "HUD-1, 1003, 1009 Annual
> Interest Statement, Department of Insurance Registration, Proper Loan
> Documents and Proper Loan Contract," as well as report an "IRS form
> 8300," prior to foreclosing; (5) Shellpoint did not disclose its accounting
> practices in violation of 5 U.S. Code § 556; (6) Shellpoint recorded
> fraudulent deeds with the Yavapai County Recorder's Office; (7) defendants
> are not in possession of the note; and [(8)] defendants violated 42 U.S.C.
> § 1983.

(*Id.* at 4.) Addressing each of these claims, they argue that dismissal with prejudice is

appropriate. (*Id.* at 6–13.) In her response, Friess did not dispute the Shellpoint

Defendants' list of causes of action she asserts against them, (Doc. 24), and therefore

concedes that the list is accurate. *See, e.g., Oester v. Wright Med. Tech., Inc.*, 2021 WL

3742439, at *5 (D. Ariz. 2021) ("Failure to respond to the merits of one party's argument

constitutes a concession of that argument." (citation omitted)).[8] Accordingly, the Court

accepts the list of causes of action and assesses each in turn.

---

[7]    Because Bank of America is entitled to dismissal with prejudice under Rule
12(b)(6), its alternative basis for dismissal under Fed. R. Civ. P. 12(b)(5) based on Friess's
failure to properly effect service need not be addressed.

[8]    In her response, Friess largely makes irrelevant arguments, including: (1) that the
Shellpoint Defendants use "names and is [sic] pseudonyms" "to confuse the Courts and
Customers," (Doc. 24 at 3 ¶¶ 12–13); (2) her prior suits against the Shellpoint Defendants
involved different claims, (*id.* ¶ 14), even though the Shellpoint Defendants did not move
to dismiss on res judicata grounds; and (3) she has "been kept out of Court each and every
time [she has] tried to get justice,'" (*id.* at 4–5 ¶ 17 & n.1). Her few relevant arguments
are addressed in the pertinent sections below.

1

2          **1.     12 U.S.C. §§ 5552(a)(1), 5531 & 5536(a)**

            Friess cites 12 U.S.C. §§ 5552(a)(1), 5531 & 5536(a) to assert claims against the

3    Shellpoint Defendants.  (Doc. 1-1 at 172, 177.)  These statues, however, do not create a

4    cause of action.  12 U.S.C. § 5552(a)(1) provides that:

5              [T]he *attorney general (or the equivalent thereof) of any State* may bring a
               civil action in the name of such State in any district court of the United States
6              in that State or in State court that is located in that State and that has
               jurisdiction over the defendant, to enforce provisions of this title or
7              regulations issued under this title, and to secure remedies under provisions
8              of this title or remedies otherwise provided under other law.  *A State
               regulator* may bring a civil action or other appropriate proceeding to enforce
9              the provisions of this title or regulations issued under this title with respect
10             to any entity that is State-chartered, incorporated, licensed, or otherwise
               authorized to do business under State law
11

12   12 U.S.C. § 5552(a)(1) (emphases added).  Friess does not, and cannot, allege that she is a

13   state attorney general or state regulator that would have standing to bring a claim under

14   this statute and, in any event, she does not allege any facts suggesting the Shellpoint

15   Defendants have engaged in an underlying violation of the provisions or regulations in

16   Title 12 of the United States Code.

17          Likewise, §§ 5531 and 5536 cannot support a claim for relief asserted by Friess

18   because § 5531 speaks exclusively of action to be taken by the Consumer Financial

19   Protection Bureau ("CFPB"), *see* 12 U.S.C. §§ 5531(a), 5564(a) (giving authority to "[t]he

20   Bureau" to take certain actions, including the right to "commence a civil action"), and §

21   5536 describes circumstances under which the CFPB may take that action. Put another

22   way, "there is no private cause of action" under these statutes.  *Howell v. SoFi Bank, N.A.*,

23   2025 WL 2208404, at *16 (D.S.C. 2025).   Friess does not, and cannot, allege that she has

24   the authority to act on behalf of the CFPB, and therefore her claim fails as matter of law.

25          Friess does not mention these statutes in her response, let alone contest the

26   Shellpoint Defendants' argument that they cannot form the basis for a cause of action.

27   (Doc. 24.)  She therefore has conceded the issue, *see Oester*, 2021 WL 3742439, at *5, and

28   these claims will be dismissed.

### 2.    The "Refusal to Answer Questions" Claim

Friess alleges "defendants have refused to answer any and all questions of who has the rights, authority and standing to enforce the note and mortgage; and refused to show proof of this, for over 12 years." (Doc. 1-1 at 172; *see also id.* at 205–07 ¶¶ 45–49 (challenging "Debt Collection Validity"), 207–11 ¶¶ 49–71 (challenging "Defective Chain of Title and also No Standing or Authority to Foreclose").)  Friess alleges that Defendants' "outright refusal year after year, request after request, QWR after QWR from the plaintiff, to produce proof of authority or standing" violates "Federal law requirements." (*Id.* at 176.)  Friess cites 15 U.S.C. § 1692g as the basis of her claim. (*Id.* at 206–07.)

That statute, part of the Fair Debt Collections Practices Act (FDCPA), requires debt collectors to provide certain information to a debtor within five days of initially communicating with them, *see* 15 U.S.C. § 1692g(a), and also restricts debt collection activity if a debtor disputes the debt or requests certain additional information, *see id.* § 1692g(b).  Friess's claim under the FDCPA fails for three independent reasons.

First, as the Shellpoint Defendants argue—and Friess does not dispute—the Combined Complaint does not set forth any allegations about the information she requested, which defendants she requested information from, or how or when those entities responded.  She does not assert a plausible claim and, by failing to argue otherwise, concedes that point. *See Oester*, 2021 WL 3742439, at *5.

Second, a one-year statute of limitations applies to claims for violation of the FDCPA.  15 U.S.C. § 1692k(d); *see also Emmons v. Select Portfolio Servicing Inc.*, 2017 WL 6883690, at * 4 (D. Ariz. 2017).  Here, Friess alleges that the efforts to foreclose on the property began in 2019, well outside the one-year statute of limitations.  Accordingly, her claim is time-barred.

Third, with the exception of 15 U.S.C. § 1692f(6), the FDCPA does not apply to "a business pursuing nonjudicial foreclosures" because "those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]."

*Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 475, 477 (2019). The nonjudicial foreclosure proceeding that forms the basis of this lawsuit, therefore, cannot give rise to a claim under § 1692g. For these reasons, this claim is dismissed.

### 3.    Shellpoint's Authority to Foreclose

Friess claims the Shellpoint Defendants are not authorized to foreclose on the property because they did not submit an "S-3" form. (Doc. 1-1 at 170, 173.) S-3 forms have no connection to foreclosure proceedings and instead are regulatory filings relating to issuers of registered securities. *See* 17 CFR § 239.13(b) ("Security offerings meeting any of the following conditions and made by registrants meeting the Registrant Requirements above may be registered on this Form [S-3]: (1) Securities to be offered for cash by or on behalf of a registrant, or outstanding securities to be offered for cash for the account of any person other than the registrant . . . . ; (2) Non-convertible securities, other than common equity, to be offered for cash by or on behalf of a registrant." (citation modified)). Arizona law does not require a mortgage servicer to file or submit an S-3 form before foreclosing on a deed of trust. *See* Ariz. Rev. Stat. § 33-808.

Friess does not address this claim in her response other than to conclusorily assert, in less than a sentence, that "these defendants' [sic] have no authority to act, [and] are not licensed or authorized to conduct business within the State of Arizona." (Doc. 24 at 15.) Her failure to substantively address the Shellpoint Defendant's arguments is deemed a concession. *Cf. Oester*, 2021 WL 3742439, at *5. This claim will be dismissed.

### 4.    Requirement for Various Documents

Friess claims the Shellpoint Defendants must provide her with numerous unrelated documents, such as a "HUD-1, 1003, 1009 Annual Interest Statement, Department of Insurance Registration, Proper Loan Documents and Proper Loan Contract before foreclosing on the property." (Doc. 1-1 at 173–74.) This claim runs contrary to Arizona law, which requires only that: (1) the deed of trust trustee record a notice of sale, *see* Ariz. Rev. Stat.§ 33-808, and mail the notice of sale to the interested parties, as well as a statement of breach to all parties, *see id.* § 33-809 Put another way, nothing required the

1   Shellpoint Defendants to provide the documents Friess references.  *Cf. Barrington Invs. of*
2   *Arizona LLC v. US Bank Nat'l Ass'n*, 2020 WL 2559921, at *5 (D. Ariz. 2020) ("Arizona
3   does not burden a lender or beneficiary to produce the original note (or any other
4   documents) before proceeding with a non-judicial foreclosure.").

5          In her response, Friess conclusorily argues—again in less than a sentence—that the
6   Shellpoint Defendants "have no documentation to demonstrate any authority by any entity
7   to conduct the foreclosure sale of my premises." (Doc. 24 at 4 ¶ 15.)  She does not mention
8   "HUD-1, 1003, 1009" or identify any other documents that she claims were required, or
9   why they were required, and does not substantively address the Shellpoint Defendant's
10  arguments.  The court deems her failure to substantively respond a concession.  *Cf. Oester*,
11  2021 WL 3742439, at *5.  This claim will be dismissed.

12                         **5.        5 U.S. Code § 556**

13         Friess cites 5 U.S.C. § 556 to argue that the Shellpoint Defendants engaged in
14  "GAAP violations; Which means they (defendants) changed their accounting" and argued
15  that they engaged in a "tax evasion scheme." (Doc. 1-1 at 174–75; *see also id.* at 224–25
16  ¶ 126.)  Friess fails to allege who changed their accounting practice, how they changed
17  their accounting practices, or how she was harmed by any change in accounting practices.
18  Friess does not reference § 566 in her response, nor does she address this claim or the
19  Shellpoint Defendants' argument to dismiss it.  She therefore concedes the argument.  *See*
20  *Oester*, 2021 WL 3742439, at *5.  This claim will be dismissed.

21                         **6.        Recording a Fraudulent Deed**

22         Friess asserts in the Combined Complaint that the Shellpoint Defendants were
23  assigned and recorded a "forged/fraudulent deed of trust," and engaged in other vaguely-
24  described fraudulent conduct. (Doc 1-1 at 175, 177–78.)  In support of her argument, she
25  cites section 33-420(A) of the Arizona Revised Statutes, (*see id.* at 223–24 ¶¶ 117–25),
26  which states in pertinent part:

27         A person purporting to claim an interest in, or a lien or encumbrance against,
28         real property, who causes a document asserting such claim to be recorded in
           the office of the county recorder, knowing or having reason to know that the

document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property . . . .

A.riz. Rev. Stat. § 33-420(A).  Claims brought under this statute must be pleaded with particularity under Fed. R. Civ. P. 9(b).  *See Pence v. Northwest Trustee Servs. Inc.*, 2015 WL 13119364, at *5 (D. Ariz. 2015) (applying Rule 9(b) to claim under section 33-420(A)).

The Shellpoint Defendants argue that Friess has failed to satisfy the heightened pleading standard for fraud claims set forth in Rule 9(b).  (Doc. 8 at 10–12.)  "Under [that rule], 'a plaintiff [alleging fraud] must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"  *Schayes v. Orion Fin. Grp., Inc.*, 2011 WL 3156303, at *3 (D. Ariz. 2011) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994) *superseded by statute on other grounds as recognized in Avakian v. Wells Fargo Bank, N.A.*, 827 Fed. App'x 765 (9th Cir. 2020)).  "The plaintiff can usually satisfy this requirement by alleging the identity of the person who made the misrepresentation; the time, place, content, and manner of the misrepresentation; the persons who heard, read, or otherwise received the misrepresentation; and the injury caused by reliance on the misrepresentation." *Schayes*, 2011 WL 3156303, at *3.

Although the Combined Complaint refers to fraud and forgeries throughout its approximately 70 pages and does assert generally that the Shellpoint Defendants forged her deed of trust and fraudulently recorded it against the Property, Friess fails to identify specifically what is fraudulent about the deed of trust, how it was fraudulently recorded, or who engaged in the fraud, among other things, and thus fails to satisfy the heightened pleading standard.  *See TL Harvey v. Maxwell & Morgan P.C.*, 2024 WL 4057455, at *6 (D. Ariz. 2024) (dismissing because although the plaintiff "provided general information regarding the alleged fraud . . . . the complaint does not identify the exact acts taken by each defendant to state a fraud claim").

In her response, Friess argues that she cannot provide any particulars of her alleged fraud, including "the names of the persons who forged the documents, the dates times [sic] and places that the documents were forged and to who the forgery was communicated . . . without discovery." (Doc. 24 at 4 ¶ 16.)  A party, however, is not entitled to engage in discovery to satisfy the requirements of Rule 9(b), which sets forth a *pleading* standard. *See State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638, 640 (N.D. Cal. 1997) ("Rule 9(b) [does not contemplate] permitting a plaintiff to engage in formal discovery at the pleading stage in order to substantiate his generalized allegations of fraud.").  "Indeed, one purpose of Rule 9(b) particularity requirements is to inhibit the filing of a complaint as a pretext for the discovery of unknown wrongs." *Id.* at 639 (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) and *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987)).  Put another way, "a claim for relief . . . requires that the plaintiff, *prior to filing his claim*, possess a reasonable belief *based upon articulable facts* that a wrong has occurred." *Id.* (second emphasis added).  Thus, Friess's argument fails as a matter of law.

Friess's argument for why she cannot plead her fraud claim with particularity also fails as a factual matter because, in the very next paragraph, she states that she has "been documenting the facts since 2011," and "that this lawsuit is not a 'fishing expedition.'" (Doc. 24 at 4–5 ¶ 17.)  If she had been documenting the facts since 2011 she should be able to plead them with particularly.  This is especially so given that this case, *Friess IV*, is at least her fourth lawsuit concerning the foreclosure of her property, she entered into the deed of trust in 2005, and she alleges that she paid on the loan until 2011.  Because Friess has failed to plead her fraud claim with particularity, it must be dismissed.

### 7.    "Show Me the Note" under UCC § 3-301

Friess next asserts that the Shellpoint Defendants are not in possession of the original mortgage note and therefore cannot enforce it, citing section 3-301 of the Uniform Commercial Code.  (Doc. 1-1 at 178–79, 191.)  This claim fails as a matter of law because, as the Court noted in its Order denying Friess's request for a temporary restraining order,

1  "this district has firmly rejected such 'show me the note' claims." (Doc. 18 (quoting

2  *Pondexter v. Murrieta*, 2021 WL 199239, at *2 (D. Ariz. 2021)).)  As noted above,

3  "Arizona does not burden a lender or beneficiary to produce the original note (or any other

4  documents) before proceeding with a nonjudicial foreclosure." *Barrington*, 2020 WL

5  2559921, at *5; s*ee also Standish v. Encore Credit Corp.*, 2014 WL 232021, at *3 (D. Ariz.

6  2014) (holding that compliance with Arizona's statutes authorizing non-judicial foreclosure

7  requires a trustee only to record an instrument demonstrating it was the successor in interest

8  to the original trustee); *Hensley v. Bank of N.Y. Mellon*, 2013 WL 791294, at *5 (D. Ariz.

9  2013) (holding a beneficiary under a deed of trust is not obligated to "show ownership or

10  otherwise document its right to enforce" the note before a nonjudicial foreclosure).

11  Friess addresses neither the Shellpoint Defendants' argument or the caselaw cited

12  above in her response and has conceded this issue.  *See Oester*, 2021 WL 3742439, at *5.

13  Her "show me the note" claim will be dismissed.

### 8.    42 U.S.C. § 1983

15  Finally, Friess alleges in her Combined Complaint that the Shellpoint Defendants

16  violated her civil rights and asserts a claim under 42 U.S.C. § 1983 (Doc. 1-1 at 179, 228–

17  29).  "[A] § 1983 claim 'requires the wrongdoer to be a state actor.'" *Marks v. Walmart

18  Supercenter #2113*, 2024 WL 4145053, at *2 (D. Ariz. 2024) (quoting *Pasadena

19  Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021)).  Friess does not,

20  and cannot, allege that the Shellpoint Defendants are state actors.  As with most of her

21  other claims, Friess does not address Shellpoint's arguments or even reference § 1983 in

22  her response, and has conceded this argument.  *See Oester*, 2021 WL 3742439, at *5.

23  Accordingly, her § 1983 claim will be discussed.

### C.    Leave to Amend

25  Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P.

26  15(a)(2).  "Leave to amend need not be granted where there exist circumstances 'such as

27  undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

28  deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, and futility of amendment.'" *Schayes*, 2011 WL 3156303, at *6 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, leave to amend is not warranted. Amendment would serve only to cause undue delay and promote Friess's seemingly bad faith, dilatory motive in filing both this lawsuit (*Friess IV*) and the three before it (*Friess I-III*). Friess has demonstrated through her conduct in all four lawsuits that she is not interested in pursuing her claims and instead is using litigation to delay foreclosure. In *Friess I* she failed to respond to Bank of America's motion to dismiss, in *Friess II* she did not timely file an amended complaint after her initial complaint was dismissed, in *Friess III* she failed to properly serve the defendants, and in this case, *Friess IV*, she filed a shotgun complaint and only nominally attempted to defend it. This conduct "displays bad faith and a dilatory motive," *Schayes*, 2011 WL 3156303, at *6 (finding bad faith where plaintiff failed to timely respond), and also belies Friess's assertion in her response that she is interested in actually litigating her claims but has been prevented from doing so through no fault of her own, (Doc. 24 at 5–6).

Moreover, leave to amend would be inappropriate here given that Friess has had three prior lawsuits dismissed, including *Friess II* where she was given leave to amend but chose not to exercise it, and the fact that she has already amended her complaint in this lawsuit once. She has had ample opportunity to state a claim against the Shellpoint Defendants but has failed to do so, and allowing her to do so would unduly prejudice the Shellpoint Defendants. Furthermore, even if she were given leave to amend, amendment would be futile given that her claims fail as a matter of law, as explained above.

Given the circumstances and the likelihood of further dilatory litigation Friess may initiate to forestall the foreclosure of the Property, the Court will require Friess to show cause as to why the Court should not declare her a vexatious litigant with respect to lawsuits relating to the Property.

Accordingly,

///

1    **IT IS ORDERED** that Defendant Bank of America's Motion to Dismiss (Doc. 7)

2   is **granted.**

3    **IT IS FURTHER ORDERED** that the Shellpoint Defendants' Motion to Dismiss

4   (Doc. 8) is **granted.**

5    **IT IS FURTHER ORDERED** that Bank of America, NewRez LLC d/b/a

6   Shellpoint Mortgage Servicing, and U.S. Bank Trust National Association, Not in its

7   Individual Capacity But Soley as Owner Trustee for VRMTG Asset Trust, **are dismissed**

8   **with prejudice**.

9    **IT IS FURTHER ORDERED** that no later than **Friday, October 17, 2025**, Friess

10  shall show cause in writing as to why she should not be declared a vexatious litigant and

11  sanctioned with a pre-filing order that limits the filing of, or requires security be posted to

12  maintain, new cases that relate to the Property.

13    Dated this 18th day of September, 2025.

14

15

16

17

18    _____

19    Honorable Sharad H. Desai
      United States District Judge

20

21

22

23

24

25

26

27

28